UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

COLIN U.,[1]

                                          Plaintiff,              Case # 20-CV-6569-FPG

v.                                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.

## INTRODUCTION

Plaintiff Colin U. protectively applied for Supplemental Security Income under Title XVI of the Social Security Act (the "Act") on or about July 18, 2013, alleging disability beginning June 25, 2009.  Tr.[2] 54.  After the Social Security Administration ("SSA") denied his claim, Plaintiff appeared, without an attorney, at a hearing on March 26, 2015, before Administrative Law Judge Julia Gibbs.  Tr. 26-47.  Plaintiff and a vocational expert testified.  On April 10, 2015, Administrative Law Judge Julia Gibbs issued an unfavorable decision.  Tr. 14-20.  Plaintiff appealed and District Judge Michael A. Telesca remanded the case for further proceedings in December 2018.  Tr. 450; *see* Case No. 16-cv-6810, ECF No. 20.

Administrative Law Judge Michael Devlin (the "ALJ") held a remand hearing on January 7, 2020.  Tr. 397-413.  Plaintiff, this time with the assistance of counsel, testified.  The ALJ issued an unfavorable decision on April 7, 2020.  Tr. 377-90.  Plaintiff appealed directly to this Court.  ECF No. 1.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

[2] "Tr." refers to the administrative record in this matter.  ECF No. 14.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  ECF Nos. 15, 16.  Plaintiff filed a reply.  ECF No. 17.  For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED.  The ALJ's decision is AFFIRMED.

## LEGAL STANDARD

### I.    District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.    Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of her past

relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education, and work experience.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### I.  The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 18, 2013, the application date.  Tr. 379.  At step two, the ALJ found that Plaintiff had the following severe impairments: anxiety disorder, not otherwise specified; social phobia; and avoidant personality disorder.  Tr. 380-81.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment.  Tr. 381-83.  Next, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels but could only work in a low-stress environment with only occasional interaction with co-workers and supervisors and little to no contact with the general public.  Plaintiff could only maintain concentration and focus for up to two hours at a time.  Tr. 383-88.

At step four, the ALJ found that Plaintiff had no relevant past work but that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including order caller, photocopy machine operator, and officer helper.  Tr. 389-90.  Therefore, the ALJ concluded that Plaintiff was not disabled.

II.     **Analysis**

Plaintiff argues that (1) the ALJ erred in evaluating the "paragraph C" criteria for Plaintiff's impairments at step three, resulting in a finding that Plaintiff did not meet any Listing and (2) the ALJ improperly determined that Plaintiff could maintain a regular schedule despite the frequency of his treatment programs.  ECF No. 15-1.  The Court disagrees.

A.     **Paragraph C**

This case implicates Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). To satisfy the requirements of any of those Listings, Plaintiff must establish the criteria of paragraph (A) *and either* paragraph (B) *or* (C).  Paragraphs (B) and (C) are identical for each of those Listings.  At issue here is the ALJ's treatment of paragraph (C).

To satisfy paragraph (B), Plaintiff must show "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning . . . 1. Understand, remember or apply information[;] 2. Interact with others[;] 3. Concentrate, persist, or maintain pace[;] 4. Adapt or manage oneself."  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 12.15.    To satisfy paragraph (C), Plaintiff must show that

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (*see* 12.00G2b); and
>
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (*see* 12.00G2c).

*Id.*; *see Jablonski v. Comm'r of Soc. Sec.*, No. 1:18-CV-00597 EAW, 2019 WL 4439453, at *4

(W.D.N.Y. Sept. 13, 2019) (quoting another source).  The regulations explain that

> "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00G.2.c.

Here, the ALJ addressed, in detail, Plaintiff's abilities to function in the broad areas

outlined in paragraph (B).  Tr. 382-83.  The ALJ then turned to paragraph (C), concluding that

"[t]he record does not establish that the claimant has only marginal adjustment, that is, a minimal

capacity to adapt to changes in the claimant's environment or to demands that are not already part

of the claimant's daily life."  Tr. 383.  Specifically, the ALJ determined that "[t]here is little to no

evidence that the claimant is incapable of advocating for himself or unable to handle stress

appropriately in various situations.  Moreover, claimant has not lived in a highly supportive living

environment and he has not been hospitalized for psychiatric treatment or care."  Tr. 383.

Plaintiff argues that the ALJ's paragraph (C) analysis is flawed because it did not

specifically address Plaintiff's capacity to adapt to changes in his environment or demands, and

what the ALJ did address (Plaintiff's ability to advocate for himself and handle stress and that

Plaintiff has not lived in a highly supportive living environment or been hospitalized) does not

bear on Plaintiff's capacity to adapt.  The Court disagrees.

First, contrary to Plaintiff's arguments otherwise, the ALJ *did* address Plaintiff's capacity to adapt to changes in his environment and demands.  That Plaintiff can advocate for himself and handle stress, and that Plaintiff is able to live without significant support from others suggests that he can function on his own, which is evidence that weighs *against* a finding of marginal adjustment.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00G.2.c. (indicating that a claimant will be found to have marginal adjustment if "you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports"); *see also Gibson v. Saul*, No. 20-CV-145, 2021 WL 371577, at *4-5 (D. Conn. Feb. 3, 2021) (noting that the regulations recognize that a claimant can meet paragraph (C) if "he lives alone and does not receive psychosocial supports but has instead created a *highly structured* environment by eliminating all but minimally necessary contact with the world outside his living space" (emphasis added) (quoting another source)).  In other words, the evidence the ALJ cited with respect to paragraph (C) supports his conclusion that Plaintiff did not meet the Listings.

Second, the ALJ's detailed analysis of the paragraph (B) criteria supports his conclusions in paragraph (C).  "[A]n ALJ is not required to articulate specific evidence supporting his or her finding that a claimant's impairment does not medically equal a listing impairment."  *John H. v. Comm'r of Soc. Sec.*, No. 20-CV-1278MWP, 2022 WL 748237, at *6 (W.D.N.Y. Mar. 11, 2022).  Even then, "[t]he ALJ's articulation of the reasons for her conclusion that the claimant is not disabled in the remaining steps of the sequential evaluation should provide a rationale that is sufficient for a subsequent reviewer or court to determine the basis of the step-three medical equivalence conclusion."  *Id.* (quoting another source); *see Schildwachter v. Berryhill*, No. 17-CV-7277, 2019 WL 1116256, at *7 (finding that the ALJ's weighing of competing medical evidence at other steps of disability analysis was sufficient to justify the ALJ's paragraph C determination,

despite the ALJ's failure to specifically weigh the competing evidence of marginal adjustment), *recommendation adopted*, 2019 WL 1115036 (S.D.N.Y. Mar. 11, 2019).

Indeed, with respect to paragraph (B), the ALJ concluded that Plaintiff had only mild and moderate limitations in the four broad functional areas.  Specifically, the ALJ noted that Plaintiff could go to the movies, use public restrooms, attend group therapy, and participate in volunteer work.  Tr. 329 (group therapy); Tr. 347 (ability to use public urinal); Tr. 757 (enjoying therapy); Tr. 765 (volunteering); Tr. 769 (anxiety "way down").  He could work on computers and play and listen to music, Tr. 329, and could swim and play with the family dog, Tr. 765.  Plaintiff could care for himself and his personal hygiene and clean occasionally but could not perform other household chores.  Tr. 155.  Plaintiff's abilities in these areas support the ALJ's conclusion that Plaintiff did not meet the paragraph (C) marginal adjustment standard.  *See Campbell v. Comm'r of Soc. Sec.*, No. 19-CV-3215, 2020 WL 5641200, at *12 (S.D.N.Y. Sept. 22, 2020) ("Courts in this Circuit routinely have found that no reasonable fact finder could conclude that a plaintiff could meet this standard when, *inter alia*, the plaintiff functioned mostly independently, including by shopping, going online, traveling independently and managing money, and was observed to have goal-directed thoughts."); *see also Jeffrey W. Berryhill,* No. 1:18-CV-0115 (LEK), 2019 WL 2210593, at *7-8 (N.D.N.Y. May 22, 2019) (finding plaintiff did not satisfy the paragraph C criteria with the requisite "marginal adjustment" where plaintiff's daily activities included managing money, playing poker, using his computer, driving a car, shopping, cooking, fishing, walking the dogs, cleaning his clothes, and vacuuming, and medical evidence indicated plaintiff's good concentration, intact memory, normal thought content, and goal oriented thought processes); *Mitchell v. Berryhill*, No. 16-CV-6588, 2018 WL 3300683, at *18 (S.D.N.Y. Feb. 2, 2018), adopted sub nom., *Mitchell v. Colvin*, 2018 WL 1568972 (S.D.N.Y. Mar. 30, 2018) (finding

claimant did not have marginal adjustment where claimant had interactions with family and friends at church, logical thought processes, intact judgment, good concentration, and could cook, clean, shop, and do laundry).

**B.      Absences**

Plaintiff next argues that the ALJ improperly concluded that Plaintiff could maintain a regular schedule despite that Plaintiff needed to regularly attend treatment at least twice a week from 2015 to 2018.  According to Plaintiff's therapist, this would lead to three to four absences per month.  ECF No. 15-1 at 18-20.  In other words, Plaintiff argues that the evidence suggest that Plaintiff's course of treatment would interfere with his ability to work.  The Court disagrees.

Frankly, there is no evidence in the record that Plaintiff's attendance in treatment precluded him from working.  Plaintiff testified that his attendance in treatment was "just a couple hours" twice a week, Tr. 39, and nothing indicates that his attendance in treatment could not be scheduled around a job.  Indeed, as the ALJ noted, Plaintiff's attendance record at treatment suggests that Plaintiff would be capable of regularly attending a job.  Tr. 383.  As a result, substantial evidence supports the ALJ's conclusions with respect to Plaintiff's ability to maintain a schedule.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 15, is DENIED, and the Commissioner's motion for judgment on the pleadings, ECF No. 16, is GRANTED.  The ALJ's decision is AFFIRMED.  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 16, 2022
     Rochester, New York

_____

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York